AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of California

<table>
<tr><td>United States of America<br>v.<br><br>KIMANI OSAYANDE JONES<br>aka KIMANI OSAYANDE JACKSON</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>Case No.    2:26-mj-0066 CKD</td></tr>
</table>

*Defendant(s)*

**FILED**

**Jun 02, 2026**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____May 30, 2026_____ in the county of _____Sacramento_____ in the
_____Eastern_____ District of _____California_____ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 844(g) | Unlawful possession of explosive material in an airport |

This criminal complaint is based on these facts:

(see attachment)

☒   Continued on the attached sheet.

_____/s/_____
*Complainant's signature*

Jeff Stewart, FBI Special Agent
*Printed name and title*

Sworn to before me and signed telephonically.

Date:   June 2, 2026

*Judge's signature*

City and state:   Sacramento, California

Carolyn K. Delaney, U.S. Chief Magistrate Judge
*Printed name and title*

ERIC GRANT
United States Attorney
ELLIOT WONG
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. |
| Plaintiff, | AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT |
| v. | |
| KIMANI OSAYANDE JONES aka KIMANI OSAYANDE JACKSON, | |
| Defendant. | |

I, Jeff Stewart, being first duly sworn, hereby depose and state as follows:

## I.     INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of a criminal complaint for KIMANI OSAYANDE JONES aka KIMANI OSAYANDE JACKSON (JONES).  Based on the facts set forth in this affidavit, there is probable cause to believe that, on May 30, 2026, JONES violated 18 U.S.C. § 844(g) – unlawful possession of explosive material at an airport.

2.     I am a Special Agent with the Federal Bureau of Investigation, and have been since June 1, 2014. I am currently assigned to the FBI Sacramento Joint Terrorism Task Force (JTTF) where I work a variety of national security matters, specifically, threats and acts of international terrorism. Before I was a Special Agent with FBI Sacramento, I served as an Intelligence Analyst with the FBI from 2008 – 2014 and specialized in international terrorism. Since being employed by the FBI, I have been trained to recognize potential threats of violence and support for Foreign Terrorist Organizations (FTOs)

AFFIDAVIT                                         1

emanating from the internet. I have training and experience utilizing FBI tools to research a subject's social media accounts. In my experience, individuals involved in the subject offenses utilize social media and other internet applications to articulate threats of violence towards individuals they dislike, or espouse support for FTOs.

3.    The facts and conclusions set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation; my review of documents and records related to this investigation; communications with others who have personal knowledge of the events, details, and circumstances described herein; and information gained through my training, experience, and communications with colleagues. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a criminal complaint, it does not set forth every fact that I or others have learned during this investigation. All dates and times listed on this affidavit are approximate.

## II.    LAW

4.    Pursuant to 18 U.S.C. § 844(g), it is unlawful for an individual to:

"possess an explosive in an airport that is subject to the regulatory authority of the Federal Aviation Administration, or in any building in whole or in part owned, possessed, or used by, or leased to, the United States or any department or agency thereof, except with the written consent of the agency, department, or other person responsible for the management of such building or airport."

5.    Pursuant to 18 U.S.C. § 844(j), an explosive is defined as:

"gunpowders, powders used for blasting, all forms of high explosives, blasting materials, fuzes (other than electric circuit breakers), detonators, and other detonating agents, smokeless powders, other explosive or incendiary devices within the meaning of paragraph (5) of section 232 of this title, and any chemical compounds, mechanical mixture, or device that contains any oxidizing and combustible units, or other ingredients, in such proportions or quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture, or device or any part thereof may cause an explosion."

## III.    PROBABLE CAUSE

**A.    Incident at Sacramento International Airport**

6.    On May 30, 2026, JONES was detained while attempting to go through a Transportation Security Administration (TSA) checkpoint and board an American Airlines flight at the Sacramento

International Airport (SMF) with a knife and other edged or bladed weapons, a torch lighter, zip ties, and an M-TYPE explosive device.[1] JONES was placed under arrest and transported to the Sacramento County Jail, where he is currently being held in state custody on $500,000 bond until his initial hearing, currently scheduled for Tuesday June 2, 2026.

7.    American Airlines Flight 2464 was scheduled to depart SMF on May 30, 2026, at 10:03 p.m. pacific time and arrive at Charlotte, North Carolina on May 31, 2026, at 5:44 a.m. eastern time. American Airlines is one the United States' largest commercial airlines and operates both domestically and internationally.  The plane used for Flight 2464 is a civil aircraft, used, operated, and employed in interstate commerce.

8.    SMF is an international airport located within the Eastern District of California.  SMF is an airport subject to the regulatory authority of the Federal Aviation Administration.

9.    FBI Sacramento received reports that, on May 30, 2026, at approximately 9:06 p.m., an individual, later identified as JONES, went through a Transportation Security Administration (TSA) checkpoint at SMF, terminal A, attempting to board American Airlines flight 2464, destined to Charlotte, North Carolina.  As he was going through the TSA security checkpoint, he was wearing a scarf covering his face and blue latex gloves on his hands.  In his carry-on bag, he had a knife, scissors, scissor blade, torch lighter, aerosol can, zip ties, and an M-TYPE explosive device.[2] JONES was traveling with five mobile phones. JONES's backpack (carry on)[3] was searched and cleared for any additional hazardous materials or explosive devices. An M-TYPE explosive device[4] was safely removed from SMF by Sacramento County Sheriff Bomb Technicians and an FBI Special Agent Bomb Technician (SABT). SABT coordinated with FBI Sacramento Operations center and provided

---

[1] An M-TYPE explosive device is an improvised explosive, like a firework but normally contains various types of improvised or standard powders, fuses, containers, etc., and can be various sizes.

[2] The brown cylindrical object was approximately 2.5 inches in length with a green fuse approximately 1inch in length coming out of one of the ends.

[3] JONES told officers he did not know those items were in his bag and that he would be okay with just discarding them.  The officers advised him that they could not simply discard explosive devices.  JONES then disclaimed ownership of the backpack.

[4] Before the device was removed from the airport, officers retrieved a bomb blast suppression blanket and placed it over the device.  The immediate area was taped off, and nobody was allowed in or out of the area.

AFFIDAVIT    3

identifiers, flight information, and relevant information. Sacramento County Sheriff Bomb Technicians and SABT rendered safe the M-TYPE explosive device and conducted a field "burn test" at SMF.

10.     Photographs of the M-Type device, weapons, and lighter:

 

11.     A portion of the powder from inside the M-TYPE explosive device and a portion of the fuse were used for testing. A torch lighter was used to burn the powder and fuse to determine reaction. The powder and fuse were viable and "energetic." The M-TYPE explosive device contained approximately 9.29 grams of powder. The powder is suspected to be pyrotechnic powder (possibly from a firework) or possibly flash powder (improvised powder), however, until formal tests are conducted via an explosives lab, this is speculation.

12.     According to the opinion of an FBI Special Agent Bomb Technician, this M-TYPE explosive device is an "explosive" within the meaning of 18 U.S.C. § 844(j), and if this M-TYPE explosive device had detonated next to a window on a pressurized aircraft flying above 10,000 feet, it had the potential to damage the aircraft's window and cause a possible loss of cabin pressure in the plane. This M-TYPE explosive device also had the potential to cause significant hand, forearm, or eye damage to any person holding it during detonation.

13.     At the time of his detention and arrest, JONES had five cellular telephones.  Each device had painter tape covering every facial camera, which appears to have been done to prevent the devices'

AFFIDAVIT

4

cameras from recording their surroundings. One of the cellular telephones had a 15-minute timer ready to start and another had a message from an unidentified number on the screen that stated, "we will be awaiting your call." JONES also possessed a butane torch lighter, which could be used to ignite the M-TYPE explosive device, described above.

14.    Prior to boarding, JONES's luggage was screened at SMF and was loaded onto the American Airlines flight headed to Charlotte, North Carolina. The screened luggage did not trigger anything suspicious at SMF. The Charlotte bound flight crew was notified, the flight departed to Charlotte, North Carolina.  Upon arrival in Charlotte, North Carolina, explosive ordinance disposal canines were utilized to inspect all luggage from the plane which revealed negative results.  A subsequent hand inspection of his bag did not produce anything illegal or concerning.

15.    SCSO noted that they have had prior contact with JONES wherein he had a history of being paranoid. JONES invoked his Miranda rights and, therefore, was not interviewed by SCSO or FBI.

**B.    Prior FBI contact with JONES**

16.    On or about May 24, 2026, an individual named Kimani Jones, believed to be JONES, called the FBI tipline and made the following report:

a)    The caller reported being followed to and from a doctor's appointment, citing a HIPAA violation. The caller described experiencing acts of violence and perversion, as well as intimidation and threats under the color of law, with individuals using their status to encourage violence. The caller stated being coerced in sleep to say certain phrases through digital media, specifically mentioning being in and out of sleep while this occurred. The caller believed that the call was being listened to during the conversation. The caller described hearing sounds coming through walls, window panes, or even outside, attributing the outside sounds to drones. The caller mentioned that the perpetrators tried to extract and share personal information and information about other people, using perverted phrases and threatening to set the caller up without any factual basis. The caller believed the intrusion occurred through some media device within the home, with sounds coming from room to room, walls, or windows. The caller identified a

AFFIDAVIT

5

person named Tonya in relation to the situation. The call was ended due to the nonsensical nature of the call.

b)   On or about May 30, 2026, the date of the SMF incident, an individual using the same telephone number as the caller on May 24, 2026, called the FBI tipline and made the following report:

The caller reported his life was being threatened through cyber means via the internet. The threats were allegedly coming from individuals named Tonya and Regina, although no last names, dates of birth, phone numbers, or addresses were known for either person. The caller stated the threats involved access to home devices, not the phone, and that the threatening parties were able to read text messages. The caller intended to follow up with the local police department to have the threats documented in writing. The threats included plans to kill the caller and false accusations of heinous crimes, despite the caller having evidence disproving those accusations. The threatening parties coerced the caller into saying self-incriminating phrases that placed the caller at the time and place of crimes, which the caller denied involvement in. The caller indicated the threats had been ongoing for about a year, with daily occurrences since June of the previous year. The caller was currently in the Bay Area but frequently traveled to Sacramento, where the threats were said to be imminent. The threatening parties allegedly tracked the caller's travel methods and planned to set the caller up for harm regardless of location. The caller claimed to hear the threatening parties in the background during the call and believed they were inside the home through some wireless connection. The caller had not yet contacted local law enforcement but planned to do so to document the threats officially and to defend against the false accusations. The caller mentioned exercising Second Amendment rights to defend against the threats but denied making any plans to harm anyone. The caller expressed a need to have the situation legally documented and sought further intelligence on how the threatening parties could access the home and personal

/ / /

/ / /

information.[5]

17. On or about February 19, 2026, a caller believed to be JONES called the Sacramento FBI Office and reported that someone was stalking him, making false accusations, and sabotaging him while he sleeps, JONES was rambling. He was put on hold and then he hung up.

## IV. CONCLUSION

18. For the reasons stated above, there is probable cause to believe that JONES violated 18 U.S.C. § 844(g) – unlawful possession of explosive material at an airport.

Respectfully submitted,

/s/
_____
Jeff Stewart
Special Agent
Federal Bureau of Investigation

Telephonically subscribed and sworn
to before me on:                                June 2, 2026

_Carolyn K. Delaney_
_____
The Honorable Carolyn K. Delaney
UNITED STATES CHIEF MAGISTRATE JUDGE

_/s/ Elliot Wong_
_____
Approved as to form by AUSA ELLIOT WONG

---

[5] There are approximately 13 incidents total beginning in March 2026, wherein a caller believed to be JONES, called the FBI tipline to report that he was being threatened and intimidated.

AFFIDAVIT                                            7

**United States v. KIMANI OSAYANDE JONES aka KIMANI OSAYANDE JACKSON**
**Penalties for Criminal Complaint**

**Defendant**
**KIMANI OSAYANDE JONES aka KIMANI OSAYANDE JACKSON**

**COUNT 1:**

VIOLATION:          18 U.S.C. § 844(g) – unlawful possession of explosive material at an
                    airport

PENALTIES:          A maximum of up to five years imprisonment;
                    Fine of up to $250,000; or both fine and imprisonment;
                    Supervised release of up to two years

SPECIAL ASSESSMENT: $100 (mandatory on each count)